James A. HEINE, Appellant,

v.

Valerie SIMON, Respondent.

No. A03–710.

Court of Appeals of Minnesota.

Jan. 27, 2004.

DeAnna M. McCashin, Schoep & McCashin, Chartered, Alexandria, MN, for appellant.

Emilio R. Giuliani, Jr., Vincent I. Breza, Labore, Giuliani, Cosgriff & Viltoft, Limited, Hopkins, MN, for respondent.

Considered and decided by LANSING, Presiding Judge; MINGE, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant James Heine brought a lawsuit against State Farm Insurance Company and respondent Valerie Simon to recover damages for injuries arising from two automobile accidents occurring five months apart, in September 1993 and February 1994. The district court severed the

claims against State Farm and Simon, reasoning that "the two accidents are not part of the same series of occurrences and are not factually connected to each other." Separate jury trials were held, and a jury awarded Heine $16,900 for injuries from the 1994 accident.

On appeal from the district court's denial of his motion for a new trial in the litigation arising from the 1994 accident, Heine argues that the district court erred in declining to instruct the jury in accordance with CIVJIG 91.40. Specifically, Heine maintains that the district court erroneously shifted the burden of establishing apportionment from Simon to Heine by failing to instruct that, if the jury "cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then defendant is liable for all the damages." Heine also argues that the district court abused its discretion in denying his motion for a new trial because (a) counsel for Simon committed misconduct during cross-examination and closing argument and (b) the jury's damage award was insufficient and influenced by passion or prejudice. By notice of review, Simon challenges the denial of her motion for remittitur and additional collateral-source offsets, arguing that the district court (a) abused its discretion in declining to apply the doctrine of collateral estoppel to the issue of Heine's lost wages and (b) improperly calculated the collateral-source offsets for past medical benefits received by Heine. We affirm.

## FACTS

On September 23, 1993, appellant James Heine was stopped at a traffic light while performing a work-related service call when his vehicle was struck from behind by a vehicle driven by an uninsured motorist. Heine suffered injuries to his neck, back, and right shoulder. Treatment for these injuries began after the accident and was scheduled to proceed through early February 1994. On February 8, 1994, respondent Valerie Simon was changing lanes in front of Heine on the highway when she lost control of her vehicle. Heine, who was on a service call for work, swerved to avoid a head-on collision with Simon and struck a pole. In this accident, Heine received injuries to his neck and lower back.

At the time of both accidents, Heine was working at Apple Automatic Food Service (Apple). His job duties included service calls to clients and office work. Heine filed a workers' compensation action in February 2000, claiming that his injuries from the 1994 accident restricted him to part-time work, forcing him to terminate his employment at Apple in August 1994. Heine was granted workers' compensation benefits for medical expenses and lost wages. But, based on a determination that the evidence presented in the workers' compensation proceeding was insufficient to establish a causal relationship between the injuries sustained in the accidents and his loss of earnings between September 1994, when he became self-employed, and December 2000, when the workers' compensation hearing concluded, benefits were denied for wage loss during this period.

In his personal-injury action, Heine served a complaint seeking damages for the injuries caused by both car accidents, naming his insurer State Farm Insurance Company and Simon as defendants. The district court severed the claims against State Farm and Simon and sent them to nonbinding arbitration. The defendants objected to the arbitration decisions; and each case proceeded to trial. This appeal involves issues arising from the jury trial for the 1994 accident.

At trial on claims related to the 1994 accident, medical experts testified as to the extent of Heine's injuries, including a herniated disc in the neck, that were attributable to each accident. Heine called three medical experts. Dr. Trobiani, a neurologist, testified that Heine sustained injuries to his neck and lower back in both accidents. In Dr. Trobiani's opinion, the herniated disc in Heine's neck, as well as a permanent injury to Heine's right shoulder, were caused solely by the 1994 accident.

Dr. Engel, Heine's treating physician, testified that after the 1993 accident, but before the 1994 accident, Heine was treated for injuries to his neck, lower back, and right shoulder. Dr. Engel opined that the 1993 accident was the primary cause of Heine's injuries and the 1994 accident merely aggravated these injuries temporarily. Dr. Engel attributed 60 percent of Heine's neck injury to the 1993 accident and 40 percent to the 1994 accident. Although Heine had a congenital, degenerative condition in his lower back that became symptomatic as a result of the 1993 accident, Dr. Engel opined that the 1994 accident caused 75 percent of Heine's lower-back injury, and the remaining 25 percent was caused by the 1993 accident.

Dr. Seizert, who also treated Heine's injuries, testified that Heine's herniated disc became symptomatic after the 1993 accident. But she was unable to give an opinion as to what injuries, if any, were caused by the 1994 accident.

Dr. McPartlin, a neurologist called by Simon, testified that Heine did not suffer any injury to the right shoulder or any additional injury to his lower back as a result of the 1994 accident. Dr. McPartlin opined that, based on Heine's described

symptoms, the herniated disc predated the 1994 accident.

Heine also testified regarding his injuries and was impeached with admissions to unrelated false statements on his income tax returns.

Heine moved the district court to instruct the jury on aggravation of a preexisting injury using CIVJIG 91.40. The district court denied the motion and instead instructed the jury using CIVJIG 163. The jury awarded Heine $16,900 in damages caused by the 1994 accident.[1]

Heine moved for a new trial on damages, or alternatively for a conditional additur. Simon moved for costs based on Minn. R. Civ. P. 68, collateral-source offsets, and remittitur. The district court denied all posttrial motions except Simon's motion for collateral-source offsets, which it granted in part and denied in part. Heine appeals from the denial of his motion for a new trial. Simon filed a notice of review on the denial of her motions for remittitur and for additional collateral-source offsets.

## ISSUES

I. Did the district court abuse its discretion in declining to use CIVJIG 91.40 when instructing the jury on aggravation of a preexisting injury?

II. Did the district court abuse its discretion in denying Heine's motion for a new trial based on attorney misconduct and insufficient damages?

III. Did the district court abuse its discretion in concluding that the doctrine of collateral estoppel did not preclude Heine's recovery for lost wages?

---

1. In a separate trial related to the 1993 accident, the jury awarded Heine $18,800 in damages.

IV. Did the district court improperly calculate the collateral-source offsets to the jury's damage award?

## ANALYSIS

### I.

██ The district court has broad latitude in selecting the language used to instruct the jury, as well as in determining the propriety of a specific instruction. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn. 1986). We will not reverse the district court's use of jury instructions absent an abuse of discretion. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn.2002). Jury instructions need only convey to the jury a "clear and correct understanding of the law." *Cameron v. Evans*, 241 Minn. 200, 209, 62 N.W.2d 793, 798 (1954). To determine whether an instruction is erroneous, we read the instructions as a whole in light of the evidence of the case. *Lindstrom v. Yellow Taxi Co. of Minneapolis*, 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). Where the instructions overall are a correct statement of the law, a new trial is not warranted. *Hilligoss*, 649 N.W.2d at 147.

██ Heine contends that, by declining to instruct the jury using CIVJIG 91.40, particularly its last sentence, the district court unfairly placed the burden of apportioning damages on him rather than on Simon. Civil Jury Instruction Guide 91.40, the instruction on aggravation of a preexisting condition, provides as follows:

> There is evidence that (plaintiff) had a pre-existing disability or a medical condition at the time of the accident.
>
> Defendant is liable only for any damages that you find to be directly caused by the accident.
>
> *If you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then defendant is liable for all the damages.*

4A *Minnesota Practice*, CIVJIG 91.40 (2002) (emphasis added). In denying Heine's motion, the district court reasoned that CIVJIG 91.40 misstates Minnesota law. In accordance with CIVJIG 163, the predecessor to CIVJIG 91.40, the district court instructed the jury as follows:

> A person who has a defect or disability at the time of an accident is nevertheless entitled to damages for any aggravation of such pre-existing condition, even though the particular results would not have followed if the injured person had not been subject to such pre-existing condition. Damages are limited, however, to those results which are over and above those which normally followed from the pre-existing condition had there been no accident-in this case, had there been no second accident.

██ As a general matter, the plaintiff in a civil action bears the burden of proving by a preponderance of the evidence damages caused by the defendant. *Canada by Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn.1997). When a preexisting injury is aggravated by the negligence of another, the plaintiff has the burden of proving not only the injuries directly caused by the defendant, but also the extent to which the plaintiff's present condition was the result of the defendant's conduct. *Leubner v. Sterner*, 493 N.W.2d 119, 122 (Minn.1992). The plaintiff's recovery against the defendant who aggravated the injury is limited to the additional injury caused by this aggravation over and above the consequences that the preexisting injury would have caused absent the aggravation. *Nelson v. Twin City Motor Bus Co.*, 239 Minn. 276, 280, 58 N.W.2d 561, 563 (1953); *see also Schore v. Mueller*, 290 Minn. 186, 189, 186 N.W.2d 699, 701 (1971). "Put another way, damages for

aggravation of a preexisting condition are simply a means to assure that the defendant pays only for the harm [the defendant] causes, not the harm plaintiff already had." *Leubner*, 493 N.W.2d at 122.

■■■ But when two or more persons through consecutive, independent acts of negligence "closely related in point of time" cause a single indivisible injury that is incapable of apportionment, the negligent actors are jointly and severally liable for damages incurred. *Mathews v. Mills*, 288 Minn. 16, 23, 178 N.W.2d 841, 844 (1970).[2] Whether defendants are subject to the single-indivisible-injury rule is a question of law. *Canada*, 567 N.W.2d at 507–08. To trigger joint and several liability for damages, the harm must be incapable of division. *Id.* at 508. In cases where the single-indivisible-injury rule arguably applies, the plaintiff has the burden of proving that the defendants caused the harm, but the burden of proving that damages can be apportioned rests with each defendant who contends that damages are divisible. *Id.* at 507. If the district court determines that the damages can be apportioned, the degree of actual apportionment is a question of fact for the jury's determination. *Mathews*, 288 Minn. at 23, 178 N.W.2d at 845. Consistent with these principles, the notes regarding usage of CIVJIG 91.40 advise that, "[i]n cases where there is a sufficient factual basis for apportioning damages among the pre-existing disability or medical condition, the first two sentences of the instruction should be given, but the last sentence should not be given (which is limited to cases where apportionment cannot be made)." 4A *Minnesota Practice*, CIVJIG 91.40 use note (2002).

■■■ The instruction given by the district court correctly states the law as to the measure for damages. *See Nelson*, 239 Minn. at 280, 58 N.W.2d at 563; *Schore*, 290 Minn. at 189, 186 N.W.2d at 701. And, contrary to Heine's argument, the instruction does not address the burden of proof. The district court determined as a matter of law that the drivers in the 1993 and 1994 accidents were not joint tortfeasors and that Heine did not suffer a single indivisible injury from the accidents. As a result of this determination, the claims were severed. In the trial involving the 1994 accident, Heine's theory of the case was that Simon aggravated Heine's preexisting injuries from the 1993 accident and caused additional injuries. The jury instruction given as to aggravation of a preexisting condition is consistent with Heine's theory and the evidence presented. We need not address the district court's conclusion that CIVJIG 91.40 is not a correct statement of Minnesota law when, as here, there is a dearth of evidence warranting instruction of the jury regarding joint-and-several liability based on a single indivisible injury.

Heine's argument for giving the joint-and-several-liability instruction in CIVJIG 91.40 fails for reasons addressed in *Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 390 (Minn.App.2001). Here, the aggravation of Heine's preexisting injury is not an apportionable cause giving rise to joint and several liability. *See id.* at 391 (stating that "[w]e do not read *Canada* to extend a defendant's burden of proof to apportionment between an at-fault defendant and an innocent or pre-existing cause"). Although the facts here are similar to those in *Mathews* in that they involve injuries from two tortfeasors, the 1994 accident

**2.** The prototypical factual scenario involving a single indivisible injury is a multiple-car chain-reaction accident where multiple impacts over a short time period result in injuries incapable of apportionment. *Mathews*, 288 Minn. at 23, 178 N.W.2d at 845.

arose from a distinct occurrence separated from the 1993 accident by months, rather than seconds, that aggravated the injuries from the 1993 accident, rather than producing a single indivisible injury. Thus, even though Heine's preexisting injuries result from a tortfeasor as opposed to an innocent cause, Heine's preexisting medical condition makes the facts at issue here akin to those in *Blatz*, not *Mathews*. *See Bondy v. Allen*, 635 N.W.2d 244, 250 (Minn.App.2001) (distinguishing between joint tortfeasors and independent or successive tortfeasors).

Accordingly, the district court did not err in instructing the jury on aggravation of preexisting injuries.

## II.

■■■■ The decision to deny a motion for a new trial rests within the district court's discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). We will not disturb the district court's decision in the absence of a clear abuse of discretion. *Id.* On appeal from the denial of a motion for a new trial, the verdict will not be set aside "unless it is manifestly and palpably contrary to the evidence, viewed in a light most favorable to the verdict." *ZumBerge v. N. States Power Co.*, 481 N.W.2d 103, 110 (Minn. App.1992), *review denied* (Minn. Apr. 29, 1992).

### A. Attorney Misconduct

■■■■ Heine argues that the district court abused its discretion when it denied his motion for a new trial based on a claim of prejudicial attorney misconduct. Attorney misconduct warrants a new trial only when the misconduct clearly resulted in prejudice to the losing party. *Eklund v. Lund*, 301 Minn. 359, 362, 222 N.W.2d 348, 350 (1974). Having been present throughout the proceedings, the trial judge is in the best position to determine whether an attorney's misconduct prejudiced the jury. *Johnson v. Washington County*, 518 N.W.2d 594, 601 (Minn.1994). As a general matter, to obtain a new trial on appeal, the record must include an objection to improper remarks, a request for a curative instruction, and a refusal by the trial court to take corrective action. *Hake v. Soo Line Ry.*, 258 N.W.2d 576, 582 (Minn. 1977). An exception to this general rule exists when the misconduct is so flagrant as to require the district court to act sua sponte or is so extreme that a curative instruction would fail to mitigate the prejudice. *Id.*

Heine argues that Simon's counsel committed misconduct by referring to the trial for the 1993 accident during cross-examination of Heine and his treating physicians, creating the prejudicial inference that Heine was attempting to recover twice for the same injuries. Prior to this questioning, the district court instructed Simon's counsel to refer to the 1993 accident trial as a separate "claim" rather than a separate "lawsuit" to avoid undue prejudice to Heine. Several times during cross-examination, Simon's counsel referred to evidence submitted in the other trial. But in each instance, Simon's counsel referred to the trial related to the 1993 accident as a separate claim, as instructed by the district court. Heine did not object to the questions during cross-examination. Rather, prior to closing arguments, Heine moved to have the district court instruct the jury that the claims were severed over Heine's objection. The district court denied the motion. Because Simon's counsel complied with the district court's instructions and because Heine did not object to the questions when they were posed, the district court properly denied Heine's motion for a new trial on this ground.

Heine also argues that Simon's counsel committed misconduct during closing argument by arguing that a negative inference could be drawn from Heine's decision not to call a physician witness who had testified at the trial on the 1993 accident. The district court had previously denied Simon's request for a negative-inference jury instruction relating to this witness. When Simon's counsel proceeded to argue the negative inference, the district court sustained Heine's objection. Shortly thereafter, during the final instructions, the jury was instructed that, when an objection has been sustained, the jury must disregard the question that draws the objection and any information elicited from that question.

Except in instances of the most extreme misconduct, prejudicial statements during closing argument can be corrected by a curative instruction. *Bisbee v. Ruppert*, 306 Minn. 39, 49, 235 N.W.2d 364, 370 (1975). "A request for such instruction[ ] is generally a prerequisite to obtaining a new trial on appeal." *Id.* Heine did not request a curative instruction, and our review of the record establishes that the district court exercised sound discretion when it denied Heine's motion for a new trial based on the negative-inference argument.

*B. Jury's Damage Award*

Heine also argues that the district court erred in denying his motion for a new trial on damages. Heine contends that the jury's damage award was based on passion or prejudice because the $16,900 found by the jury was significantly less than the $100,000 awarded in arbitration. A motion for a new trial based on insufficient damages may be granted when the evidence demonstrates that the damage award could have resulted *only* from passion or prejudice. Minn. R. Civ. P. 59.01(e); *Gale v. Howard*, 413 N.W.2d 234, 237 (Minn.App.1987); *see also Flanagan v. Lindberg*, 404 N.W.2d 799, 800 (Minn. 1987). Speculation as to the influence of passion or prejudice is an insufficient basis to grant a new trial. *Vadnais v. Am. Family Mut. Ins. Co.*, 309 Minn. 97, 104, 243 N.W.2d 45, 49 (1976) (reversing the district court's order granting a new trial based on passion or prejudice where it appeared that the district court only speculated as to the possibility of prejudice because specific examples or instances of prejudice were not cited in the record). To determine whether an award of damages is "within the bounds of reason," the district court must compare the verdict to the facts of the case. *Kalpin v. Helgeson*, 254 N.W.2d 378, 379 (Minn.1977).

The record provided by counsel is insufficient for us to determine the district court's reasons for denying Heine's new-trial motion based on the damage award.[3] But the trial record establishes that there is sufficient *evidence* to support the jury's damage award, thus refuting Heine's claim that the jury's award could have resulted only from passion or prejudice. Heine's compensable damages were those damages he proved that Simon caused, over and above any preexisting medical condition. *See Nelson*, 239 Minn. at 280, 58 N.W.2d at 563. Finding that Heine suffered only a 60–day disability as a result of the 1994 accident, the jury did not award future damages.

Expert medical testimony in the record supports the jury's determination of $16,900 in past damages, notwithstanding

3. The parties failed to provide this court with the transcript from the posttrial proceedings, which the district court incorporated by reference into the findings of its order on the parties' posttrial motions.

Heine's claim of approximately $137,000 in past damages. Dr. Engel, Heine's treating physician, testified that the injuries Heine received as a result of the 1994 accident were a temporary aggravation of the injuries from the 1993 accident, and he apportioned the percentage of injuries attributable to each accident. Similarly, Dr. McPartlin's testimony supports a limited award of damages for the 1994 accident.

Viewing the evidence in the light most favorable to the verdict, we conclude that the district court did not abuse its discretion when it denied Heine's motion for a new trial based on insufficient damages.

### III.

Simon argues that the doctrine of collateral estoppel applies to a workers' compensation determination that Heine's wage loss was not caused by the 1994 accident, thus precluding him from recovering damages for wage loss in this case and entitling Simon to remittitur. The availability of collateral estoppel is a mixed question of law and fact, subject to de novo review. *Falgren v. State, Bd. of Teaching,* 545 N.W.2d 901, 905 (Minn.1996). If collateral estoppel is available, the decision to apply the doctrine is within the district court's discretion. *Saudi Am. Bank v. Azhari,* 460 N.W.2d 90, 92 (Minn.App. 1990). Likewise, whether to grant remittitur is within the district court's discretion, and we will not reverse that determination absent a clear abuse of discretion. *Myers v. Hearth Techs., Inc.,* 621 N.W.2d 787, 792 (Minn.App.2001), *review denied* (Minn. Mar. 13, 2001).

"Collateral estoppel bars the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment." *Clapper v. Budget Oil Co.,* 437 N.W.2d 722, 725 (Minn.App.1989) (stating that collateral estoppel is the issue preclusion branch of res judicata), *review denied* (Minn. June 9, 1989). Collateral estoppel is applicable when

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Schlichte v. Kielan,* 599 N.W.2d 185, 187–88 (Minn.App.1999), *review denied* (Minn. Nov. 17, 1999). The Minnesota Supreme Court has acknowledged that the principles of res judicata apply to decisions of the workers' compensation court in certain instances. *Westendorf v. Campbell Soup Co.,* 309 Minn. 550, 550, 243 N.W.2d 157, 158, (1976) (acknowledging that the principles of res judicata apply to workers' compensation board decisions but declining to apply res judicata to claims not litigated in the prior hearing); *Brix v. Gen. Accident & Assurance Corp.,* 254 Minn. 21, 26, 93 N.W.2d 542, 546 (1958) (applying res judicata to an action brought by the employee against employer's workers' compensation insurer where the issue of whether employee's injuries arose during the course of employment was adjudicated in a previous workers' compensation action against the employer).

As discussed above, the district court's reasons for declining to apply the doctrine of collateral estoppel were not made available to us. *See supra* n. 3. But the record supports the district court's decision not to apply collateral estoppel to the issues adjudicated in the workers' compensation proceeding because the issues were not identical and the workers' compensation proceeding did not afford Heine a full and fair opportunity to be heard on the wage-loss issue.

The issue of liability for damages, such as lost wages, is not litigated in workers' compensation proceedings. *See Katzenmaier v. Doeren,* 150 Minn. 521, 522–23, 185 N.W. 938, 938 (1921). Workers' compensation actions generally determine the amount of workers' compensation benefits for which an employer is liable when an employee is injured during the scope of employment. *See* Minn.Stat. § 176.021, subd. 1 (2002). In Heine's case, the workers' compensation judge addressed the following issues: (1) the amount of Heine's average weekly wage on the dates of injury, (2) the date when Heine was restricted to part-time work by his doctors, (3) whether Heine could claim 225 weeks of temporary partial disability for each injury, (4) whether Heine's actual earnings after September 18, 1994, were a measure of his earning capacity, (5) whether Heine withdrew from the labor market to become self-employed in 1994, and (6) whether Heine made a diligent search for work after September 18, 1994. The workers' compensation judge determined that, although the injuries Heine suffered after each accident caused some wage loss, the evidence presented in the workers' compensation proceeding was insufficient to support a causal relationship between the injuries sustained in the 1993 and 1994 accidents and his loss of earnings between September 18, 1994, and December 4, 2000, when the workers' compensation hearing concluded.

In contrast to the workers' compensation proceeding that examined the combined injuries sustained in both accidents and the resulting wage loss, the issues before the jury were the nature of the injuries Heine received that are attributable solely to the 1994 accident and the amount of Heine's lost wages attributable to this accident from the date of injury to the date of trial in September 2002. Thus, the issues adjudicated in the workers' compensation action were factually dissimilar from those litigated in district court.

In addition, because Heine was unable to offer medical testimony at the workers' compensation hearing and that proceeding allows evidence that is inadmissible in a jury trial to support the benefits decision, we also conclude that Heine's opportunity to be heard in the workers' compensation action is insufficient to satisfy the full-and-fair-opportunity criterion necessary to preclude litigation of the wage-loss issue at trial. Simon argues that the Minnesota Supreme Court's decisions in *Westendorf* and *Brix* extend the doctrine of collateral estoppel to apply to other proceedings on the basis of the workers' compensation decision. But Minnesota law establishes that agency hearings do not provide a full and fair opportunity to be heard unless elaborate procedural due-process safeguards are built into the proceedings. *Cf. Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 118 (Minn. 1991) (applying collateral estoppel where administrative hearing was presided over by an impartial hearing examiner, both parties were entitled to representation by counsel, the rules of evidence were followed, and findings had to be established by "substantial and competent evidence").

Hearings before a department referee are informal in nature. The appeal tribunal is not bound by common law or statutory rules of evidence and procedure. Hearsay is admissible and may be sufficient to support the department's decision. Representation of a claimant by an attorney, although permitted, is subject to the oversight of the department. There is no provision for juries. [And t]he emphasis at the hearing is on the speedy resolution of a claim.... [T]he nature of such a hearing does not constitute a full and fair opportunity to be heard for purposes of applying collat-

eral estoppel to the resulting determination.

*Clapper*, 437 N.W.2d at 726 (citations omitted) (declining to apply collateral-estoppel effect to determination of Department of Jobs and Training that employee voluntarily resigned from his employment in employer's subsequent wrongful-termination lawsuit).

Workers' compensation hearings are not bound by common law or statutory rules of evidence, nor are the rules of pleading or procedure applicable. Minn. Stat. § 176.411 (2002). Reliable hearsay is admissible. *Id.* Additionally, there is no right to a jury trial on a workers' compensation claim. *Snesrud v. Instant Web, Inc.*, 484 N.W.2d 423, 426 (Minn.App.1992), *review denied* (Minn. June 17, 1992). Based on the nature of the proceedings and the record before us, we conclude that the workers' compensation hearing did not provide a full and fair opportunity to be heard for the purpose of applying the doctrine of collateral estoppel in Heine's negligence action against a third-party tortfeasor.

Because two of four criteria for applying the doctrine of collateral estoppel were not met, the district court did not abuse its discretion in declining to apply the doctrine to the issue of Heine's past wage loss.

### IV.

Simon argues that the jury's award of $8,000 for past medical costs is subject to a collateral-source offset of $23,214.43, the amount paid by Heine's workers' compensation benefits for medical expenses. We disagree. Once damages have been awarded to compensate a plaintiff for losses available to the date of entry of the verdict by collateral sources, the district court shall reduce the award by the amount of collateral sources, including workers' compensation benefits, that have been paid for the benefit of the plaintiff. Minn.Stat. § 548.36 (2002). Heine claimed medical expenses totaling $27,167.44 through the date of trial. The record establishes that his workers' compensation benefits paid a total of $23,214.43 toward Heine's medical expenses through the date of trial, leaving a total of $3,953.01 in unpaid medical expenses at the time of trial. The district court granted a collateral-source offset of $4,046.99 to the $8,000 awarded by the jury for Heine's past medical expenses, thus limiting Heine's recovery to those uncompensated medical expenses incurred by the date of the verdict. Accordingly, the district court correctly applied the collateral-source offset to the jury's damage award.

### DECISION

The district court exercised its sound discretion in instructing the jury as to aggravation of a preexisting injury and in denying Heine's motion for a new trial. Additionally, the district court did not err in declining to apply the doctrine of collateral estoppel to preclude litigation of the issue of past wage loss following the workers' compensation proceedings. Finally, the district court's application of collateral-source offsets to the jury's damage award is fully supported by the record.

**Affirmed.**